**Durrenzo Jermayne NELSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–94–0263–CR.**

Court of Appeals of Texas,
Amarillo.

Aug. 16, 1995.

---

Law Office of Candace Norris, Candace Norris, Canyon, for appellant.

Randall County District Attorney, Randall L. Sherrod, John Jay Thorpe, Canyon, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Appellant Durrenzo Jermayne Nelson was convicted by a jury for burglary of a habitation. The trial court assessed punishment at 15 years imprisonment. In two points of error, appellant asks if the evidence sufficiently supported his conviction, that is, whether the state proved beyond reasonable doubt that he entered the habitation. We answer yes and affirm.

## STANDARD OF REVIEW

A person commits the offense of burglary if, without the effective consent of the owner, he enters a habitation and commits or attempts to commit theft. *Tex.Pen. Code Ann.* § 30.02(a)(3) (Vernon 1995). In evaluating appellant's sufficiency claim, we determine whether any rational trier of fact could have found each of the foregoing elements of burglary to exist beyond a reasonable doubt. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App.1995); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1994, no pet.); *Wilson v. State*, 879 S.W.2d 309, 310 (Tex.App.—Amarillo, 1994, no pet.). Though we peruse all the evidence, our duty is not to act as another juror. Rather, it is to function as a guardian of due process assigned to assure the verdict's rationality. *Moreno v. State*, 755 S.W.2d at 867. The jury alone possesses the right to weigh testimony, resolve credibility disputes, and select the evidence it cares to believe. *Skillern v. State*, 890 S.W.2d at 879. Moreover, should inconsistent or contradictory testimony exist, we assume that the discrepancies were resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d at 867.

When the crime involved is burglary, several other guidelines become applicable. Guilt, including the element of entry, may be established by circumstantial evidence. *Garza v. State*, 841 S.W.2d 19, 21–22 (Tex.App.—Dallas 1992, no pet.). For instance, direct evidence that the defendant actually entered the home to commit theft is unnecessary if the record nevertheless discloses that a burglary occurred, that the defendant possessed some or all of the stolen property, and that the defendant failed to proffer a reason for having it. *Price v. State*, 902 S.W.2d 677 (Tex.App.—Amarillo, 1995, no pet.); *Garza v. State*, 841 S.W.2d at 22. The evidence must further establish that his possession of same was personal, recent, and pursuant to a conscious assertion of right to the property. *Garza v. State*, 841 S.W.2d at 22; *Robinson v. State*, 658 S.W.2d 779, 781 (Tex.App.—Beaumont 1983, no pet.). Additionally, if the accused tenders an explanation, the State must prove it false or unreasonable. *Price v. State, supra.* Finally, proof of conflicting explanations provides adequate basis upon which to deem the explanations false or unreasonable. *See Lopez v. State*, 202 S.W.2d 845, 845–46 (Tex.Crim.App. 1947) (upholding a verdict founded upon evi-

dence showing that the defendant possessed the stolen property and uttered three different stories as to how he came to have it).

## APPLICATION TO FACTS

The record discloses that Officer Jason Zang was dispatched to investigate a report of a prowler at 7825 Cervin Street. Fifteen minutes later, at approximately 2:30 a.m., he arrived in the area and saw the appellant and David Oages riding bicycles down the street. No one else was seen in the area. So, Zang stopped them. The two left their mounts, and, in doing so, appellant laid a flashlight and a piece of plastic auto stereo trim on the ground. Zang then noticed appellant's gloved hands, which piqued his interest on the temperate September morning. When asked their reason for being in the area, the two individuals uttered conflicting stories. Shortly thereafter, a second officer arrived and assumed control over appellant and Oages. Zang left to investigate the neighborhood.

Approximately five houses, or half a block, from the site at which appellant was detained, Zang encountered a home with its garage door open. Screwed into the ceiling of the garage were hooks on which bikes could be hung. However, no bikes were seen. Consequently, he awoke the homeowner, Seth Thomason. The latter ventured into the garage and stated that his two bikes, normally hung on the ceiling hooks, were indeed missing. Also discovered were flakes of paint which had fallen from the ceiling and landed atop one of the two vehicles parked in the garage. Thomason indicated that one removing the bikes from their hooks would often cause paint to fall from the ceiling if not careful.

Further inspection of the surroundings revealed that both cars had been entered. The stereo in one of the vehicles had been partially removed. Two screwdrivers were also found in the floorboard of that car.

Zang then asked the homeowner to walk down the street to where appellant and Oages awaited his returned. Thomason complied. The two reached the destination, and Thomason informed the officers that the bikes were his. Though he could not specifically recall what he did the previous evening, Thomason, nevertheless, testified that as a matter of course he stored the bikes on the ceiling hooks and closed the garage before going to sleep. Moreover, he gave no one permission to enter the garage or ride the bikes that September morning.

When originally stopped, appellant and Oages offered no explanation for their possessing the bikes. Later, they told Zang that a friend gave them the items. The other officer on the scene was told that the items were theirs. However, Oages remarked in a written statement given the police that they had found the bikes "setting [sic] by the street in the driveway."

█ Appellant did not dispute that someone had been in the garage sans permission of the owner. Nor did he attack Thomason's ownership of the bikes taken. He simply contended that the evidence failed to show that he was the one who entered the facility and took them. Yet, given his presence and the absence of others, save Oages, near the scene of the crime, the minimal time period between his detention and the discovery of the theft, his possession of the stolen property to the exclusion of others, his initial claim that the bike was his, and the eventual conflicting explanations proffered, we conclude that the requirements of *Price, Garza,* and *Lopez* were satisfied. A fact finder could have rationally inferred from the evidence that appellant entered the garage to take the bikes, that is, that appellant burglarized the Thomason home.

Accordingly, we overrule the points of error and affirm the judgment entered below.