IN THE
TENTH COURT OF APPEALS
 

No. 10-99-019-CR

     DANNY WOODSON,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 82nd District Court
Falls County, Texas
Trial Court # 7233
                                                                                                                
                                                                                                            
O P I N I O N
                                                                                                                
     Danny Woodson was found guilty by a jury of the offense of burglary of a habitation and
was sentenced to ten years in prison. He contends that 1) the trial court committed reversible
error and violated his Sixth Amendment rights when it allowed the State to introduce evidence
of a statement from a co-defendant without giving him the right to confront and cross-examine
that witness and 2) that the evidence was factually insufficient to support a finding of guilty on
the charge of burglary of a habitation. We affirm the judgment of the trial court.
 
 
Facts
      On the afternoon of May 15, 1998, Willie Coe was checking on a house that he owned in
Marlin, Texas, when he found a piece of black felt on the ground. He decided to investigate
further, so he went around the house, unlocked the front door, and went inside. Once inside
the house, he found that every closet and drawer in the home were open. He reported the
incident to the police. 
      Later that night, Coe and his wife decided to check on the house again. As his wife drove
around the block, Coe took his gun and went to the back of the house to look around. (Coe
testified that he sent his wife away for safety reasons.) As he approached the corner of the
garage, he spotted Woodson and Michael Mitchell coming out of his back door carrying a TV. 
Coe fired his gun hitting Mitchell in the leg. The two men dropped the TV and ran back into
the house. Coe ran around to the front of the house and caught Woodson coming out of the
front window. He held Woodson at gunpoint until the police arrived. 
Issue Two - Factual Sufficiency
      In his second issue, Woodson attacks the factual sufficiency of the evidence supporting his
conviction. Woodson admits being at the crime scene, however, he argues that he was only
there to stop the burglary and was not participating in the crime. If a party is attacking the
factual sufficiency of an adverse finding on an issue to which they did not have the burden of
proof, they must demonstrate that there is insufficient evidence to support the adverse finding.
Johnson v. State, No. 1915-98, slip op. at 15 (Tex. Crim. App. February 9, 2000). 
The complete and correct standard a reviewing court must follow to conduct
a Clewis


 factual sufficiency review of the elements of a criminal offense asks
whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury’s determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.... 

Id. at 18. Stated differently, the evidence is factually insufficient if (1) it is so weak as to be
clearly wrong and manifestly unjust or (2) the adverse finding is against the great weight and
preponderance of the available evidence. Id. at 17. The jury is the judge of the credibility of
the witnesses and may “believe all, some, or none of the testimony.” Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991).
      The jury had before it sufficient evidence to convict Woodson of the offense of burglary of
a habitation. The elements of burglary of a habitation which the State had to prove in this
instance are 1) a person 2) without the effective consent of the owner 3) enters a habitation 4)
with intent to commit theft. Tex. Penal Code Ann. § 30.02 (Vernon 1994 & Supp. 1998).
Circumstantial evidence may establish guilt. Nelson v. State, 905 S.W.2d 63, 64 (Tex.
App.—Amarillo 1995, no pet.). In a burglary prosecution, specific intent to steal or commit
theft may be inferred from the circumstances. Moreno v. State, 702 S.W.2d 636, 641 (Tex.
Crim. App. 1986). Intent may also be inferred from the defendant's conduct and surrounding
circumstances. Turk v. State, 867 S.W.2d 883, 887 (Tex. App.—Houston [1st Dist.] 1993,
pet. ref'd). 
      Woodson was identified at the scene by witnesses other than Coe, the victim. However,
the mere presence of an accused at the scene of an offense is not alone sufficient to support a
conviction; although presence is a circumstance tending to prove guilt which, combined with
other facts, may suffice to show that the accused was a participant. Johnson v. State, 537
S.W.2d 16, 18 (Tex. Crim. App. 1976). Coe testified that he had not given Woodson
permission to enter his house. Woodson gave conflicting explanations for his presence at the
victim’s house including: (1) that he was helping Mitchell move furnishings from what he
thought was Mitchell’s house; and (2) that he was actually trying to catch the individuals that
were burglarizing Coe’s house. 
      In addition to the nonconsensual nighttime entry and his inconsistent explanations,
Woodson’s intent to commit theft is a reasonable inference from the fact that he was seen
carrying the TV out the back door and his attempted flight upon being discovered. See
Wilkerson v. State, 927 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1996, no
pet.)(intent to commit theft shown by defendant’s nonconsensual nighttime entry into closed
grocery store, defendant’s possession of gloves and a flashlight, his attempt to hide from the
officers, and his inconsistent stories about having lawfully entered and then fallen asleep);
Davis v. State, 783 S.W.2d 313, 318 (Tex. App.—Corpus Christi 1990, pet. ref'd--untimely
filed)(intent to commit theft sufficiently shown where burglarious entry happened at night,
defendant ran away when he was discovered but left flashlight on window sill). 
      The investigating officer testified that he did not do a complete investigation. The officers
investigating the offense did not take fingerprints at the scene and did not test the blood on the
defendant’s clothing to conclusively show if the blood was Woodson’s or that of another
suspect. Woodson argues that this evidence would have conclusively proved whether or not he
was involved in the burglary. However, our review of all the evidence presented shows that
the judgment was not so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust nor was it against the great weight and preponderance of the available
evidence. The evidence presented is, therefore, factually sufficient to support Woodson's
conviction. Accordingly, issue two is overruled.
Issue One - Right to Confrontation
      In his first issue, Woodson argues that the trial court committed reversible error and
violated his Sixth Amendment rights when it allowed the State to introduce evidence of a
statement from Mitchell without giving him the right to confront and cross-examine the
witness. A co-defendant’s confession is inadmissible hearsay and its admission is generally
harmful. Hood v. State, 828 S.W.2d 87 (Tex. App.—Austin 1992, no pet.). However, in this
case, the actual statement by Mitchell was not offered by the State. 
      On direct, the investigating officer in describing the limited scope of his investigative
procedure testified that he did not see any need to perform the additional tests because
Mitchell’s statement matched Coe’s statement regarding the events that night. However, that
portion of the officer’s testimony was stricken from the record and the jury was instructed to
disregard it. 
      As defense strategy, Woodson attacked the adequacy of the investigation that linked him to
the crime. During cross examination of the investigating officer, Woodson questioned why the
investigating officer did not attempt to test the blood on Woodson’s clothing to see if it
matched Woodson’s or the “real perpetrator.” Woodson contended the “real perpetrator” was
cut while breaking out the front window to escape from Coe. Woodson’s position was that he
got the “real perpetrator’s” blood on his clothing in his efforts to stop the “real perpetrator” as
he was coming out the window. Further, Woodson questioned the adequacy of the
investigation because no effort was made to obtain fingerprints from inside the house or off the
TV that was being carried out the back door. 
      On re-direct examination, the officer was asked whether Mitchell’s statement was the
reason for limiting his investigation. The testimony about which Woodson complains is as
follows:
            Prosecutor:              Just answer “yes” or “no.” Did you take a statement from
Michael Mitchell?
 
            Officer:                   Yes, sir.
 
            Prosecutor:              I am not asking you what was in that statement, okay?
 
            Defense Counsel:      We object to any reference to a statement from a man that the
State did not bring to Court to testify.
 
            The Court:               Overruled.
 
            Prosecutor:              Is that the reason that statement – is that the reason you did not
take blood samples?
 
            Defense Counsel:      Object to that as a suggestion as some kind of a comment as to
what that statement said. Since we do not have the benefit of
cross-examination of Michael Mitchell, we object to the
question and any answer.
 
            The Court:               Overruled.
 
            Officer:                   That’s correct.

      By inquiring about the evidence supporting the officer’s decision to limit the investigation,
Woodson’s attorney made Mitchell’s statement relevant because it was directly responsive to
his questions concerning the evidence relied upon by the officer and his decision to limit his
investigation. Therefore, the trial court did not err by allowing the officer to discuss
Mitchell’s statement in this limited context. Accordingly, we overrule Woodson’s first issue.
Conclusion
      Having resolved both issues against Woodson, we affirm the judgment of the trial court.
 
                                                                   TOM GRAY
                                                                   Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed August 30, 2000
Do not publish